**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**

_____

No. 94-5112
_____

D.C. Docket No. 93-367-CR-UU-B


UNITED STATES OF AMERICA,

                          Plaintiff-Appellee,


     versus


PERLA MARTIN DAVIS, MARTA MORFA,
EMILIO VALDES, ELVA R. LAMAS,

                          Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____


**(July 2, 1997)**

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*],
Senior Circuit Judge.

HATCHETT, Chief Judge:


     Appellants Perla Martin Davis, Elva Lamas, Marta Morfa and

Emilio Valdes, M.D., were convicted in a complex Medicare fraud

_____

[*] Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the
Second Circuit, sitting by designation.

scheme.  On appeal, appellants challenge their convictions and sentences on a number of grounds, including insufficient evidence, erroneous jury instructions, failure to charge the jury on an element of the offense, admission of uncharged criminal conduct evidence, exclusion of expert psychological testimony, prejudicial prosecutorial comments, failure to grant sentencing departures, and improper assessment of restitution.  We affirm the restitution orders assessed against appellants Davis, Lamas and Morfa, and the judgments and sentences that the district court entered in all other respects.

## BACKGROUND

In August of 1993, a grand jury returned a 23-count Medicare fraud indictment against the appellants and eight other defendants.  The indictment charged each of the twelve with conspiring, in violation of 18 U.S.C. § 371, to (a) "defraud the United States by impeding, impairing and obstructing the function of the Department of Health and Human Services in administering the Medicare Program," and (b) commit offenses against the United States, including violations of the False Claims Statute, 18 U.S.C. § 287, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b (Count 1).  Counts 2-16 of the indictment charged various defendants, including appellants, with substantive violations of the False Claims Act.[1]  Counts 17-23 included indictments for violations of 42 U.S.C. § 1320a-7b.  The grand jury charged both

---

[1] The indictment charged Davis in Counts 2, 3, 8 and 9; Morfa in Counts 10 and 14; Lamas in Count 16; and Valdes in Counts 4, 7, 8 and 10.

Davis and Morfa with violating the Anti-Kickback Statute: Davis in Count 19 and Morfa in Counts 21-23. The eight codefendants, including Frank Morfa, Perla Morfa, Celia Morfa Martin, Mario Fonesca, Ana Conde, Luis Mateus, Sandra Mayorga and Nora Vega, subsequently pleaded guilty, leaving appellants to proceed to trial.

The government alleged that the appellants and their co-defendants executed the Medicare fraud scheme through the operation of sixteen related companies (the Morfa companies). Certain members of the Morfa extended family, including appellants Davis, Lamas and Morfa, owned, operated and worked for the businesses at different times during the course of the conspiracy. Over a period of several years, the Morfa companies submitted false claims and billed Medicare for medically unnecessary nutritional supplements and feeding supply kits, ostensibly for the purpose of parenteral and enteral nutritional (PEN) therapy, the majority of which the intended patients never received. Participants in the scheme included (1) recruiters, who solicited patients through whom Medicare could be billed fraudulently without their knowledge; (2) physicians, such as Valdes, who signed blank Certificates of Medical Necessity (CMNs) which authorized the issuance of PEN therapy medical supplements and supply kits for the recruited patients, regardless of their medical necessity and the patients' eligibility to receive such products; and (3) managers, who paid the recruiters to locate Medicare-eligible participants, paid the physicians for signing

3

false CMNs, and ran the actual Medicare billing operation --
completing the fraudulent CMNs, preparing falsified Medicare
claim forms and monthly summaries, and filing the documents with
Medicare seeking reimbursement.

On July 20, 1994, the United States District Court for the
Southern District of Florida granted judgments of acquittal on
the false claims count against Lamas (Count 16), and one false
claims count against Morfa (Count 14).  On August 1, 1994, the
jury returned guilty verdicts on most of the offenses charged in
the indictment.  Each appellant received a guilty verdict on
Count 1, the multiple-object conspiracy.  In addition to the
conviction on Count 1, Davis received guilty verdicts on Counts
2, 3, 8 and 9, and an acquittal on Count 19; the jury declared
Morfa guilty on Counts 10, 21, 22 and 23; and Valdes was found
guilty on Counts 4, 7, 8 and 10.[2]  In October of 1994, the
district court sentenced Davis to forty-one months, Lamas to
forty-six months and Morfa to forty-six months of imprisonment.
Pursuant to the information and recommendations found in the
appellants' Presentence Investigation Reports (PSR), the court
ordered them to pay restitution jointly and severally to the
United States Department of Health and Human Resources (HHR) in
installments as the Bureau of Prisons instructed.  The district
court imposed the following restitution amounts:  $9,182,271.40
for Davis, $8,119,445.40 for Lamas and $8,119,445.00 for Morfa.

---

[2] Lamas only received the guilty verdict on the conspiracy
count following the district court's dismissal of the substantive
false claims charge.

Valdes received a sentence of thirty months imprisonment; the court also ordered Valdes to pay $261,896.73 in restitution.

## ISSUE

The issue is whether the district court committed plain error in ordering appellants Davis, Lamas and Morfa to pay restitution jointly and severally, without making the proper factual findings regarding the amount of loss and appellants' respective abilities to pay.[3]

## CONTENTIONS

The appellants argue that the district court (1) plainly erred in imposing restitution on them for amounts greater than their specific contributions to the conspiracy; and (2) plainly erred in failing to make the requisite factual findings regarding each appellant's ability to pay.

The government counters that the district court may attribute the total loss associated with the conspiracy to a particular conspirator when imposing restitution. A defendant is liable for the foreseeable acts of co-conspirators. While indigence is a consideration, it is, nonetheless, one of many factors and does not itself bar an order of restitution. Because the appellants did not dispute the relevant facts at trial, the government contends that the district court was not required to make explicit factual findings on the restitution issue.

---

[3] We do not find appellants' arguments persuasive regarding the remaining issues raised in this appeal, and, deciding that the district court did not commit reversible error, we dispose of them without additional comment. See Eleventh Circuit Rule 36-1.

5

**DISCUSSION**

In this appeal, appellants challenge the restitution order on two grounds:  the district court erred in determining the amount of loss attributable to each appellant for restitution purposes; and the district court failed to make findings as to each appellant's ability to pay the restitution amount.  The Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663-64, empowers the district court to award restitution to victims.  The VWPA enumerates those factors which a district court must consider before imposing a restitution order.  Section 3664(a) provides:

> The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (1994).[4]  The court must award restitution "in accordance with sections 3663 and 3664."  <u>United States v. Twitty</u>, 107 F.3d 1482, 1493 (11th Cir. 1997) (quoting 18 U.S.C. § 3556).

---

[4] We acknowledge that Congress substantially amended sections 3663 and 3664 in 1996.  <u>See</u> Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title II, §§ 205(a), 206(a), 110 Stat. 1214, 1229-31, 1232-36 (Apr. 24, 1996), codified at 18 U.S.C.A. §§ 3663, 3664 (West Supp. 1997).  We need not apply the amended versions to these facts, however, because the amendments are only effective "for sentencing proceedings in cases in which the defendant is convicted on or after Apr. 24, 1996."  18 U.S.C.A. §§ 3663, 3664 note (West Supp. 1997).  All future references to the VWPA within this opinion are to its pre-1996 amendment version.

This court ordinarily reviews a district court's restitution order for abuse of discretion. <u>United States v. Remillong</u>, 55 F.3d 572, 574 (11th Cir. 1995). The court reviews the legality of the restitution order <u>de</u> <u>novo</u>. <u>United States v. Cobbs</u>, 967 F.2d 1555, 1556 (11th Cir. 1992). The appellants admit, however, that they did not dispute the restitution order at sentencing. Moreover, the appellants did not state any objections to their PSRs on the issue of restitution. A defendant's failure to challenge a restitution order at sentencing constitutes a waiver of the objection. <u>United States v. Stinson</u>, 97 F.3d 466, 468 n.1 (11th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1007 (1997). The appellants were obligated to preserve this issue for appeal, and their silence in the face of that duty precludes us from addressing the merits of their contentions absent a showing of manifest injustice. Effective appellate review is hindered when the asserted error has not been brought to the district court's attention. Under these facts, therefore, we will review the restitution orders for plain error. <u>See</u> <u>United States v. Obasohan</u>, 73 F.3d 309, 310-11 (11th Cir. 1996) (absent manifest injustice, this court will not entertain an appeal of a restitution order if the defendant failed to raise an objection to the district court); <u>see</u> <u>also</u> <u>Cobbs</u>, 967 F.2d at 1557-58 (if plain error exists, this court may review the claim).

1. The Amount of Loss

The appellants fail to show any error in the district court's measure of restitution assessed on behalf of HHR. The

appellants contend that the district court did not properly tailor the amount of restitution to each appellant's specific conduct within the conspiracy. In Obasohan, this court held that a district court may order a defendant to pay restitution for losses "which result from acts done in furtherance of the conspiracy of which the defendant is convicted." 73 F.3d at 311. After careful review of the record, we conclude that the district court did not commit error, plain or otherwise, in calculating the amount of loss attributable to the appellants.

A conspiracy is an ongoing criminal activity for which a participant remains culpable until the conspiracy ends or the participant withdraws. Hyde v. United States, 225 U.S. 347, 369 (1912). "Congress intended restitution to be tied to the loss caused by the offense of conviction." Hughey v. United States, 495 U.S. 411, 418 (1990). Where the defendant is convicted of conspiracy to defraud, the district court has "the authority to order restitution for the losses caused by the entire fraud scheme, not merely for the losses caused by the specific acts of fraud proved by the government at trial." United States v. Brothers, 955 F.2d 493, 497 (7th Cir.), cert. denied, 506 U.S. 847 (1992).

Each appellant herein had a sufficiently substantial involvement in the fraud scheme to warrant the restitution amount that the district court ordered. See United States v. Barnette, 10 F.3d 1553, 1556 (11th Cir.), cert. denied, 513 U.S. 816 (1994)(granting restitution to the extent justice requires). Our

8

conclusion follows the general proposition that a defendant is liable for reasonably foreseeable acts of others committed in furtherance of the conspiracy of which the defendant has been convicted. See, e.g., United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993). The appellants herein were thoroughly involved in this scheme to defraud the Medicare system. Accordingly, the district court properly relied on the information contained in the PSRs to render the appellants jointly and severally liable for the losses resulting from the enterprise. The court did not plainly err in imposing restitution on each appellant based on the acts of all those involved in the scheme for the period that the appellant was involved. See United States v. Plumley, 993 F.2d 1140, 1142 (4th Cir.), cert. denied, 510 U.S. 903 (1993).

2.   Ability to Pay

The appellants also do not demonstrate that the district court failed to consider the appellants' financial resources, such that the restitution order can be deemed manifestly unjust. The statute requires that the district court "consider" the factors listed above prior to imposing restitution. 18 U.S.C. § 3664(a). This court has held that the district court must "evaluate the defendant's financial condition and ability to pay before determining the restitution amount . . . ." Remillong, 55 F.3d at 574 (citations omitted) (emphasis added).

Neither the statute nor this court requires the district court to make specific factual findings. Twitty, 107 F.3d at

9

1493 ("District courts are not obligated to make explicit factual findings of a defendant's ability to pay restitution if the record provides an adequate basis for review."); see also United States v. Hairston, 888 F.2d 1349, 1352-53 (11th Cir. 1989). In order to warrant a reversal of the restitution order, the challenging party must show that the "record is devoid of any evidence that the defendant is able to satisfy the restitution order." Remillong, 55 F.3d at 574 (internal quotation marks omitted). The appellant's burden is particularly acute under the plain error standard of review.

Under these facts, the record shows that the district court considered each appellant's ability to pay prior to imposing restitution. The sentencing transcripts reveal that the district court noted its reliance upon the information contained in each appellant's PSR. The PSRs assessed the appellants' financial resources and capacities for future earnings. Each PSR recommended that the appellant would be able to make monthly payments toward restitution. "A defendant who disputes his ability to pay restitution bears the burden of demonstrating his financial resources by a preponderance of the evidence." Twitty, 107 F.3d at 1494 n.14; see also 18 U.S.C. § 3664(d) (1994). A defendant's failure to present contrary evidence authorizes the district court to rely on the information provided in the PSR. Twitty, 107 F.3d at 1494 n.14.

Our prior decision in United States v. Page, 69 F.3d 482 (11th Cir. 1995), does not compel resentencing under the facts at

10

issue.  In Page, this court found plain error where the district court did not provide the defendants with an opportunity to object to its findings of fact or conclusions of law as required under United States v. Jones, 899 F.2d 1097, 1102 (11th Cir.), cert. denied, 498 U.S. 906 (1990), overruled on other grounds, 984 F.2d 1136 (11th Cir. 1993) (en banc).  Page, 69 F.3d at 492-93.  Moreover, although the district court had adopted wholesale the recommendations in the PSR, this was deemed insufficient because the district court neglected to consider the defendants' objections.  Page, 69 F.3d at 494.  Furthermore, the record demonstrated that the district court recognized one defendant's inability to pay the restitution imposed.  Page, 69 F.3d at 494.  Our opinion in Page, therefore, stands only for the proposition that "the wholesale adoption of the PSR at the commencement of the sentencing hearing, without more, does not suffice to meet the court's obligation under 18 U.S.C. § 3664(a) and under Remillong to consider a defendant's financial resources before imposing restitution."  Page, 69 F.3d at 493-94.

The facts herein demonstrate that the district court sought input from the appellants.  As in Page, the district court acknowledged the information in the PSR and adopted its factual findings regarding the appellants' abilities to pay restitution.  Unlike Page, however, the court reviewed the appellants' objections to the PSRs.  The court then specifically asked each appellant and counsel whether they objected to the court's findings of fact or the sentence imposed.  No appellant took

11

exception to the restitution order. Where the PSR provides a detailed account of the "amount of the loss sustained by the victim, the defendant's financial resources, and other factors enumerated in Sections 3663-3664 as appropriate for the court to consider when imposing restitution[,] . . . the record provides an adequate basis for review of the restitution order[]." Twitty, 107 F.3d at 1493-94. We cannot find plain error where the district court adopts a PSR supporting its restitution order, provides the defendant with the chance to object, and considers any objections raised. While the district court must explain its decision to reject any challenges to the restitution order, we can impose no such burden where the defendant fails to avail himself of the opportunity to object.

Upon review of the record, we conclude that the district court did not plainly err in determining appellants' restitution amounts. Even though the district court did not make any explicit factual findings as to appellants' abilities to pay restitution, the record does reveal that the district court considered appellants' abilities to pay as a factor. The district court gave each appellant an opportunity to object to the restitution amount and encountered silence. The district court has only the duty to consider the defendant's ability to pay; it does not have a duty to make a specific factual finding. Twitty, 107 F.3d at 1493. Under these circumstances, the appellants have not shown that the district court failed to honor

12

that obligation.  Accordingly, we affirm the district court's restitution orders.

**AFFIRMED**