UNITED STATES of America, Plaintiff-Appellee,

v.

Alan ODOM, Brandy Nicole Boone, Defendants-Appellants.

No. 98-6241.

United States Court of Appeals,

Eleventh Circuit.

May 31, 2001.

Appeals from the United States District Court for the Southern District of Alabama. (No. 97-00157-CR-1), Richard W. Vollmer, Jr., Judge.

Before BIRCH and BLACK, Circuit Judges, and NESBITT*, District Judge.

NESBITT, District Judge:

Defendants-Appellants Brandy Boone and Alan Odom appeal from their criminal convictions for

conspiracy to commit arson and for conspiracy to use fire to commit a felony prosecutable in a United States

court. Both Defendants challenge their conviction under 18 U.S.C. § 844(i), contending that the United States

failed to prove that St. Joseph's Baptist Church, the church which the Defendants were convicted of burning,

had a sufficient connection to interstate commerce. Both Defendants also challenge their conviction under

18 U.S.C. § 844(h)(1), contending that the indictment insufficiently defined the elements of the offense and

the jury's verdict was inconsistent. Defendant Boone also challenges the order requiring her to pay restitution.

For the reasons stated below, we reverse the conviction under § 844(i) and affirm on all other counts.

I. BACKGROUND

*A.    Statement of Facts*

On the evening of June 30, 1997, Defendants-Appellants Odom and Boone attended a party in Little

River, Alabama, a rural community in southern Alabama. The partygoers, including Boone and Odom,

consumed a large quantity of alcohol. Around 10 or 11 p.m., a number of the partygoers, including Odom

and Boone, left the party in three vehicles with the purpose of finding an abandoned car and setting it on fire.

The group obtained gasoline from a local service station and then went in search of an abandoned car. After

being unable to locate the abandoned car, the three vehicles pulled up alongside one another at an intersection

and Boone suggested "Let's burn the nigger church."

---

*Honorable Lenore C. Nesbitt, U.S. District Judge for the Southern District of Florida, sitting by designation.

All three vehicles drove directly from the intersection to St. Joseph's Baptist Church, which was just down the road. Odom and Michael Woods broke into the church and set fire to a sofa and some curtains. One of the partygoers convinced the others to extinguish the fire and not burn down the church. After extinguishing this fire, all of the partygoers left the church grounds. Unbeknownst to Boone or the others, Odom and Woods returned in a short time to finish the job they started—to burn down the church—which they successfully accomplished.

B.      *Proceedings Below*

A grand jury in the Southern District of Alabama issued a ten count indictment charging Odom, Boone and others with conspiracy to commit an offense against the United States (18 U.S.C. § 371), damaging religious property because of the religious character of the property (18 U.S.C. § 247(a)(1)), use of fire or explosive to commit a felony prosecutable in federal court (18 U.S.C. § 844(h)(1)), damage or destruction by means of fire or explosive of any property used in interstate commerce or in any activity affecting interstate commerce (18 U.S.C. § 844(i)) and aiding and abetting an offense against the United States (18 U.S.C. § 2).

At trial, the government presented the following evidence of St. Joseph's Baptist Church's connection to interstate commerce: (1) one Bible, three hymnals and an unspecified number of Sunday School materials in the church had been purchased from the National Baptist Publishing Board in Nashville, Tennessee; (2) natural gas used to heat the church was purchased in Alabama, but originated in Mississippi; (3) the church received donations from the pastor's brother and sister-in-law who reside in Detroit, Michigan; (4) the church was a dues-paying member of the First Eastern Shore Missionary Baptist Church Association, an intrastate church association, which, in turn, chose delegates to attend the Alabama State Baptist Convention, which, in turn, chose delegates to attend the National Baptist Convention. There was no evidence that any member of St. Joseph's congregation had ever been elected to attend the state or national conventions. There was no evidence that any interstate traveler had ever visited St. Joseph's Church.

After the government produced all of its evidence supporting the interstate commerce nexus, defense counsel moved for judgment of acquittal on the § 844(i) count contending that the government had failed to present sufficient evidence of the requisite nexus to interstate commerce. The trial court held that the principles of *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) did not apply and that the government had met its jurisdictional burden.

The jury returned a verdict convicting Odom of conspiracy to violate 18 U.S.C. § 844(i) and

844(h)(1) and, in two separate counts, of violating and attempting to violate both of those statutes. The jury found Boone guilty of conspiring to violate 18 U.S.C. § 844(i) and conspiring to willfully use fire to commit a felony prosecutable in a United States court under 18 U.S.C. § 844(h)(1), in violation of 18 U.S.C. § 371. After the jury verdict, defense counsel moved to set aside the jury's verdict with respect to the § 844(h)(1) conspiracy conviction on the ground that the verdict was inconsistent. The district court denied that motion.

Pursuant to U.S.S.G. § 2K1.4, which has a guideline range of 33-41 months (offense level 20, criminal history category I), the district court sentenced Boone to 41 months imprisonment, followed by a three-year supervised release term with the special condition of 300 hours of community service. The court also ordered Boone to pay $96,836 restitution to St. Joseph's Baptist Church jointly and severally with three co-defendants.

## II. DISCUSSION

*A.      Section 844(i) & Interstate Commerce Requirement*

Defendants Odom and Boone challenge the application of 18 U.S.C. § 844(i) to the arson of St. Joseph's Baptist Church contending that an insufficient connection exists between the arson of St. Joseph's Church and interstate commerce for the statute to be constitutionally applied. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988). This principle requires that a decision on a constitutional question is appropriate only after addressing the statutory questions. *Id.* at 446, 108 S.Ct. 1319. Thus, here, we must determine whether the government met its burden under § 844(i) before addressing whether the statutory requirements satisfy the interstate commerce clause of the Constitution.

Section 844 prohibits the malicious damaging or destroying or attempting to damage or destroy, by means of fire or explosive, any building *used in interstate commerce* or *in any activity affecting interstate commerce.* 18 U.S.C. § 844(i). The Supreme Court recently clarified in *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), that the qualifying words "used in" signaled that Congress *did not* invoke its full authority under the Commerce Clause. *Id.* at 1909-10. Section 844(i) does not cover the destruction of buildings whose *damage* might affect interstate commerce. *Id.* at 1910. Rather § 844(i) is limited to *buildings used in* interstate commerce. *Id.* Therefore, § 844(i) requires the government to prove that St. Joseph's Church was used in interstate commerce or an activity affecting interstate commerce.

The *Jones* court set forth the method to determine whether damage or destruction of a building is properly prosecutable under § 844(i). *Id.* The proper inquiry "is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Id.* (quoting *United States v. Ryan,* 9 F.3d 660, 675 (8th Cir.1993) (Arnold, C.J., concurring in part and dissenting in part)). This determination involves a three-part inquiry: (1) What is the function of the building? (2) Is the function of the building involved in commerce? (3) Does the commerce in which the building is involved sufficiently affect interstate commerce?

1.     *Function of the Building*

There is no dispute that building owned by St. Joseph's Church functioned as a church. The congregation used this building for regular worship services one Sunday a month, Sunday school classes on a weekly basis and Bible studies and prayer meetings one night each week. Additionally, regular choir practices and occasional funerals were held in the church. To enable the church to perform these functions, St. Joseph's Church (1) purchased one Bible, three hymnals and an unspecified number of Sunday School materials from the National Baptist Publishing Board in Tennessee; (2) used natural gas that originated in Mississippi; (3) received donations from out-of-state; and (4) paid dues to an intrastate organization which in turn was part of an interstate organization.

2.     *Involvement in Commerce*

The legislative history of § 844(i) reveals that the statute was crafted specifically to include *some* non-business property such as police stations and churches. *Russell v. United States,* 471 U.S. 858, 860, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985). While § 844(i) excludes no particular type of building, the property must be "actively employ[ed] for commercial purposes." *Jones,* 120 S.Ct. at 1910. The question here is whether St. Joseph's Church was sufficiently involved in interstate commerce so that the destruction of this church is covered by § 844(i).

Churches are not commonly considered a business enterprise; nonetheless, churches can and do engage in commerce. The "business" or "commerce" of a church involves the solicitation and receipt of donations, and the provision of spiritual, social, community, educational (religious or non-religious) and other charitable services. *See, e.g., United States v. Grassie,* 237 F.3d 1199, 1204 (10th Cir.2001) (explaining how the church buildings were used for a broad range of religious, cultural, social, recreational, educational and financial activities). The question of whether a building is used in commerce or affects commerce does not

turn merely on whether the activity is engaged in for a profit. *Cf. Camps Newfound/Owatonna v. Town of Harrison,* 520 U.S. 564, 584-85, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997) (concluding that the commerce clause applies to charitable and non-profit entities). To require a profit motive would exclude not only universities, museums, schools, think tanks, police and fire stations, but also many hospitals, trade and professional organizations, lobbying organizations, and the non-profit, non-governmental organizations that epitomize commerce and capitalism: stock[1] and commodity[2] exchanges and the World Trade Organization.[3] *Cf. id.* at 585, 117 S.Ct. 1590; *Grassie,* 237 F.3d 1199, 1210 n. 7. In general, churches engage in activities and provide services to their members, to their community and to the public at large; churches solicit contributions to provide these services; and they purchase goods necessary to provide these services. Accordingly, the evidence proving that a church building is used in or affects interstate commerce must relate to these activities—i.e. whereby it engages in activities relating to its "business" *as* a church.

The purchase and receipt of goods or services necessary for or common to the maintenance of any building, such as gas, electricity, insurance, or mortgage loans, do not prove that the function of the building is to engage in commerce. *See Jones,* 120 S.Ct. at 1910-11. Just as the *Jones* Court determined that the purchase of natural gas could not rise to level of a private home being "used in or affecting commerce," *id.,* so too here, the mere receipt of natural gas, whether intrastate or interstate, is insufficient to show that St. Joseph's Church was used in an activity affecting commerce. On the other hand, the receipt of donations, the purchase of hymnals and payment of dues are the type of commercial activities by which a church would conduct its business as a church, and therefore, engage in commerce.

3.      *Involvement in Interstate Commerce*

The mere engagement in commercial activities may not necessarily provide the requisite nexus between the function of the building and interstate commerce. *See United States v. Ryan,* 227 F.3d 1058, 1061 (8th Cir.2000) (explaining that a commercial building must still have an active connection to interstate

---

[1]*See, e.g.,* NYSE, *About the NYSE,* at http://www.nyse.com/ about/about.html (last visited Feb. 7, 2001). The New York Stock Exchange has been an incorporated non-profit corporation since 1971. *Id.*

[2]*See, e.g.,* Chicago Board of Trade, *About CBOT,* at http:// www.cbot.com/cbot/www/ page/0,1398,10+10+83,00.html (last visited May 14, 2001). The Chicago Board of Trade, the world's oldest commodity futures exchange, presently operates as self-governing, self-regulated, not-for-profit, non-stock corporation. *Id.*

[3]*See* World Trade Organization, *What is the World Trade Organization,* at http://www. wto.org/english/thewto_e/whatis_e/_tif_e/ fact1_e.htm (last visited Feb. 7, 2001).

commerce to be covered by § 844(i)); *see, e.g., id.* at 1062-63 (concluding a vacant former commercial establishment failed to create a sufficient interstate commerce nexus under § 844(i)); *United States v. Rea,* 223 F.3d 741, 743 (8th Cir.2000) (finding that merely because the building is church property does not mean that it meets the interstate commerce requirement for § 844(i)).

"[I]t is appropriate to avoid the constitutional question that would arise" if § 844(i) were construed to extend to local criminal conduct. *Jones,* 120 S.Ct. at 1912. To avoid a constitutional problem requires interpretation of § 844(i) in accord with the requirements of the Commerce Clause. *Cf. id.* The *Jones* Court specifically instructed that § 844(i) should be construed, in accordance with *United States v. Lopez,* 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), to require a distinction between what is truly national and what is truly local. *Jones,* 120 S.Ct. at 1911-12.

The presence of a jurisdictional element in § 844(i) enabled the Court in *Jones* to avoid a constitutional commerce clause analysis mandated by *Lopez. Id.* at 1912; *see also Lopez,* 514 U.S. at 562, 115 S.Ct. 1624 (explaining that a statute's jurisdictional element *might establish* that the legislation was limited to "specific" incidents with explicit connections to interstate commerce). In construing a statute such as § 844(i), courts should presume, absent clear evidence to the contrary, that Congress did not intend to obliterate the distinction between national and local authority. *Id.* Therefore, the statute must be interpreted in such a way so it does not encompass "paradigmatic common-law state crime." *Id.*

Allowing the government to meet the interstate commerce requirement through only a nominal showing of a connection to interstate commerce would do as much to "completely obliterate" the distinction between national and local authority as if no jurisdictional requirement existed at all. *See* Andrew St. Laurent, *Reconstituting United States v. Lopez: Another Look at Federal Criminal Law,* 31 Colum. J.L. & Soc. Probs. 61, 112 (1998) ("A purely nominal jurisdictional requirement ... does nothing to prevent the shifting of the [federal-state] balance ... [a]s virtually all criminal actions ... involve the use of some object that has passed through interstate commerce."); *see also Jones,* 120 S.Ct. at 1911 (warning that if minimal connections to interstate commerce sufficed to trigger § 844(i), the language "used in" would have no office); *Morrison,* 120 S.Ct. at 1752 (advising of the importance of maintaining a distinction between national and local interests). The presence of a jurisdictional element may preserve the constitutionality of the statute so long as a case-by-case analysis requires sufficient proof of a connection to interstate commerce. Otherwise, Congress could circumvent the requirement of the Constitution's interstate commerce clause by inserting a

jurisdictional element into every statute and allowing the government to rely on the most minimal proof of that element.

Rather, § 844(i) requires that covered property is employed actively, not merely in commerce, but in interstate commerce. *Ryan,* 227 F.3d at 1062 (explaining that the building must be actively employed in interstate commerce at the time of the fire). A federal statute may regulate purely intrastate activity without demonstrating its specific impact on interstate commerce, only if it regulates *economic activity. Morrison,* 120 S.Ct. at 1750; *United States v. Lopez,* 514 U.S. 549, 559-61, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Section 844(i) regulates non-economic activity, arson. The government, therefore, must show that this arson affects interstate commerce by showing how the function of this particular building was used in or affected interstate commerce.

To be considered actively employed in interstate commerce, the function of a building must have more than a passive, past, or passing connection to interstate commerce. *Jones,* 120 S.Ct. at 1910. The *Jones* court observed every building is constructed with supplies that have moved in interstate commerce. *Id.* Likewise, every building, every business, and every person in the nation, has received money or goods that traveled in interstate commerce or is a member of some organization that directly or indirectly is involved in interstate commerce. Thus, to meet the jurisdictional requirement, the government must show that the function of the property involves the active engagement in commerce and the property either has a direct and regular connection to interstate commerce, *see, e.g., Grassie,* 237 F.3d at 1212 (finding "a settled, regular pattern" of use of truck in interstate commerce sufficed although not actively employed in interstate commerce at the "precise time of the arson"), or a substantial connection to interstate commerce, *see, e.g., United States v. Gaydos,* 108 F.3d 505, 510 (3d Cir.1997) (explaining that significant connections to out-of-state factors could satisfy the interstate commerce nexus under § 844(i)).

Here, the government offered evidence that the church engaged in interstate commerce by (1) receiving donations from two out-of-state donors, (2) utilizing a handful of Bibles and prayer books that had been purchased from an out-of-state source, and (3) indirectly contributing to an out-of-state church organization through its membership in the in-state church organization. These "connections" to interstate commerce are too passive, too minimal and too indirect to substantially affect interstate commerce.

Alternatively, the government contends that even if the link between the arson of St. Joseph's Church in particular and interstate commerce is insufficient, the aggregate effect of arson of church property suffices

if it substantially impacts interstate commerce. Indeed, in *United States v. Dascenzo,* 152 F.3d 1300 (11th Cir.1998), this Court suggested that only a "minimal effect on interstate commerce" was required under § 844(i) so long as the effect of arson on the particular type of property had an aggregate effect on interstate commerce. *Id.* at 1302-03. Because arson of church property substantially affects interstate commerce in the aggregate, the government contends that this statute is properly applied to the arson of St. Joseph's Church.

Yet, in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the Supreme Court expressed great doubt as to whether aggregation should apply to any non-economic activity. *See id.* at 1751. While the Court declined to adopt a per se rule against aggregating the effects of any non-economic activity, the Court observed that thus far, aggregation had only been upheld in cases where the *regulated activity* was economic in nature. *Id.; e.g., Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (upholding regulation of restaurant's discriminatory commercial practice because of aggregate affect created a highly restrictive effect on interstate travel); *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (same regarding hotel's discriminatory practice); *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (sustaining regulation of manufacture of wheat because of aggregate effect on wheat production). The purpose of aggregation is to allow regulation of purely intrastate activity where the absence of such regulation would undercut a larger *economic* regulatory scheme affecting interstate commerce. *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624. No regulatory scheme regulating an economic activity is present here.

Regarding non-economic *criminal activity,* the *Morrison* court clearly rejected Congress' ability to "regulate [such] conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* Thus, if the government cannot meet the jurisdictional requirement in a criminal statute regulating non-economic activity, it may not rely on the aggregate effect of that conduct. Accordingly, here the government may not rely on the aggregate effect of arson on churches to establish the requisite nexus with St. Joseph's Baptist Church.

The Government has failed to set forth sufficient evidence establishing that St. Joseph's Baptist Church, the building destroyed by Defendants' act of arson, was used in or affected interstate commerce according to the requirements of § 844(i). Accordingly, Defendants' convictions under § 844(i) are reversed.

B.      *Vagueness of the Indictment*

Defendant Boone challenges Count I of the indictment, which charges her with conspiracy to use fire

to commit a felony prosecutable in a federal court violating § 844(h)(1). Defendant Boone contends that because Count I does not specify in which predicate felony, § 247(a)(1), § 247(c) or § 844(i), the government alleged Boone used fire to violate § 844(h)(1), Count I was unconstitutionally vague.

Due process requires an indictment to provide notice sufficient to allow the defendant to prepare an adequate defense. *United States v. Lehder-Rivas,* 955 F.2d 1510, 1519 (11th Cir.1992). Predicate felonies do not need to be listed in the indictment so long as the defendant has actual notice of the charge. *Id.; see also United States v. Johnson,* 982 F.2d 1192, 1197 (8th Cir.1992); *United States v. Zavala,* 839 F.2d 523, 527 (9th Cir.1988). Even an inadequate indictment satisfies due process if the defendant has actual notice, so that she suffers no prejudice. *United States v. Becton,* 751 F.2d 250, 257 (7th Cir.1984).

In this case, Count I sets forth all of the underlying facts concerning the three felonies which the government charged the defendants with conspiring to commit by use of fire in violation of 18 U.S.C. § 844(h)(1): (1) intentional damage to religious real property in and affecting interstate commerce based on its religious character, 18 U.S.C. § 247(a)(1); (2) intentional damage to religious real property because of the race and color of individuals associated with the property, 18 U.S.C. § 247(c); and (3) malicious damage by fire of a building used in interstate commerce, 18 U.S.C. § 844(i). Defendant Boone knew that she was charged with conspiring to set fire to St. Joseph's Baptist Church. Counts IV charged one predicate felony as a separate substantive count and Count V specified two of the predicate felonies. Therefore, Boone does not and cannot claim that she did not have notice of these felonies or that she was unable to mount a defense to these felonies. Accordingly, the indictment was not unconstitutionally vague.

C.      *Inconsistent Verdicts*

Defendants Boone and Odom challenge the jury's verdict convicting them of conspiracy to violate 18 U.S.C. § 844(h)(1), but acquitting them of violating the underlying predicate felonies as inconsistent verdicts. Nearly seventy years ago, Justice Holmes, writing for the Supreme Court, explained: "Consistency in the verdict is not necessary." *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). As each count in an indictment is regarded as a separate indictment, merely the jury's choice to acquit on one charge does not have a res judicata effect on any other separate count. *Id.* Justice Holmes further explained that "[t]he most that can be said [of an inconsistent verdict] is that the verdict shows that either in the acquittal or the convictions the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Id.* In other words, the jury compromised.

This principle was more recently affirmed by *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell,* the defendant was charged with possession with the intent to distribute cocaine and using the telephone in committing and facilitating certain felonies—i.e. conspiracy to possess cocaine with intent to distribute. *Id.* at 60, 105 S.Ct. 471. The jury acquitted the defendant of the former, but convicted her of the latter. *Id.* The Supreme Court held the rule set forth in *Dunn* even applies to verdicts, such as the one here, that acquit on a predicate offense while convicting on the compound offense. *Id.* at 64, 105 S.Ct. 471. Defendants' convictions for conspiring to violate 18 U.S.C. § 844(h)(1) in violation of 18 U.S.C. § 371 will stand regardless of their acquittal on any or all of the other counts. Accordingly, Defendants Boone's and Odom's convictions under this count are affirmed.

D.      Restitution

Defendant Boone challenges the district court's ordering her to pay, jointly and severally with Odom and others, over $96,000 in restitution to St. Joseph's Baptist Church. Defendant Boone claims that the facts establish that she withdrew from the conspiracy and therefore, do not support the district court's restitution order.

Ordinarily, this Court reviews a district court's restitution order for abuse of discretion. *United States v. Davis,* 117 F.3d 459, 462 (11th Cir.1997). If a defendant fails to challenge a restitution order at sentencing, she waives that objection. *Id.* In such a case, this Court reviews for plain error. *Id.* Defendant Boone admits that she did not raise the issue below and we accordingly review for plain error.

A restitution order may order payment of losses consistent with the common law of conspiracy. Namely, a defendant convicted of participation in a conspiracy is liable not only for her own acts, but also those reasonably foreseeable acts of others committed in furtherance of the conspiracy. *Id.* at 462-63. A participant remains liable until the conspiracy ends or the participant withdraws. *Id.* Here, Boone contends that she withdrew from the conspiracy once she left the church and that it was unforeseeable that Odom and others would return to the church to continue the arson of the church.

A conspirator's participation in a conspiracy is presumed to continue until all activity related to the conspiracy ceases. *United States v. Starrett,* 55 F.3d 1525, 1550 (11th Cir.1995). Consequently, a defendant has the burden of proving (1) that she took *affirmative* acts inconsistent with the object of the conspiracy *and* (2) communicated those acts or her desire to withdraw to her co-conspirators (or disclosed the scheme to law enforcement). *United States v. United States Gypsum,* 438 U.S. 422, 464-466, 98 S.Ct. 2864, 57 L.Ed.2d 854

(1978)(emphasis added); *Starrett,* 55 F.3d at 1550. The presumption here is that the conspiracy to burn the church continued. Merely leaving the church grounds did not necessarily end the conspiracy, nor her participation in the conspiracy. Boone took no affirmative acts inconsistent with the conspiracy: she did not put the original fire out; she did not convince the others to leave; and she did not announce to the others that she had changed her mind about the original plan to "burn the nigger church." She is, therefore, appropriately liable for the acts of the other members of the conspiracy. Accordingly, the district court's restitution order holding Boone jointly and severally liable with the other conspirators is appropriate and affirmed.

### III. CONCLUSION

For the foregoing reasons, we reverse Appellants' convictions under § 844(i) because the government failed to present sufficient proof that St. Joseph's Church was used in or affected interstate commerce. We affirm the Appellants' convictions under 844(h)(1) because the indictment was not unconstitutionally vague nor the verdict inconsistent. Finally, we affirm the district court's restitution order because Appellant Boone failed to establish that she withdrew from the conspiracy; therefore, Boone is jointly and severally liable for the acts of her co-conspirators.

AFFIRMED in PART, REVERSED in PART.