UNITED STATES of America,
Plaintiff,

v.

John Allen LATON, Defendant.

No. Crim. 01–20235.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 7, 2002.

Jennifer Lawrence Webber, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Leslie Ballin, Memphis, TN, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

CLELAND, District Judge.

Pending before the court is Defendant John Allen Laton's "Motion to Dismiss Indictment," filed on October 17, 2001. In a one count indictment, Defendant was charged with arson under 18 U.S.C. § 844(i). Specifically, Defendant was

charged with maliciously damaging and destroying the building known as the Henning Fire Station by means of fire. Defendant brought the instant motion, alleging that the indictment fails to allege a crime over which this court has jurisdiction. For the following reasons, the court will grant Defendant's motion.

## I. Background

For purposes of this motion, the parties have stipulated to the following facts.[1]

1. The building commonly known as the Henning Fire Station houses fire fighting equipment including trucks, as well as the office, kitchen, and meeting spaces for the Henning Volunteer Fire Department.

2. The Henning Fire Department has purchased fire trucks, nozzles, turn-out gear, and other mission related equipment and supplies from out of state vendors.

3. The Henning Fire Department has sent parts to an out of state vendor for maintenance and repair work. Specifically, in January, 1993, a repair work on a bearing and oil seal were charged to the Henning Fire Department in the amount of $119.80 by WS Darley and Co. in Melrose Park, Illinois.

4. The Henning Fire Department is responsible for responding to fire calls in an area of Tennessee that includes numerous residences, churches, one U.S. Highway, public buildings, and several businesses.

5. For example, the Henning Fire Department has provided emergency services to the U.S. Hwy. 51 rest area, the Midway Market, Brown's Laundry Mat, the City of Henning Police Department, and vehicles on fire and/or involved in accidents along U.S. Hwy. 51.

6. When the Henning Fire Department responds to fire calls outside the Henning city limits, a fee is charged. In March 2000, the fee was a standard rate of $300.00. The rate was recently raised to $500.00. (The defendant maintains that this fact is not relevant to the issue before the court, therefore the defendant stipulates only to the truthfulness, and not the relevance, of the statement). This fee is billed directly to out-of-state insurance companies, such as Hartford Insurance and the Conesco Agency in St. Paul Minnesota, as well as to local agents who represent out-of-state insurance companies. The fee is billed by City of Henning personnel at City Hall based on information provided by the fire department personnel on a "Fire Department Run Sheet."[2]

7. The City of Henning pays wages to the volunteer fire fighters who work out of the Henning Fire Station based on the amount of time they spend on a fire scene. For example, from February 28, 1998 through April 9, 1998, seventeen volunteers with the Henning Fire Department were paid a total of $482.50. These wages were paid based on information provided by the Fire Chief to City Hall.[3]

8. The Henning Fire Department purchases goods and services from out

---

1. Because the facts on this matter are not in dispute, an evidentiary hearing is not necessary.

2. Counsel for both parties stipulated on the record at the January 7, 2002 hearing that, in a typical year, fees for fire calls out of the city do not exceed $1,000.

3. Counsel for both parties stipulated on the record at the January 7, 2002 hearing that payments in a typical year do not exceed approximately $1,000.

of state vendors, which are unique to their mission of fire fighting. These items and services include fire trucks, nozzles and turnout gear.

9. In a "Fire Department Run Sheet" filled out and signed by the defendant regarding the fire that destroyed the Henning Fire Station in March, 2000, the defendant classifies the fire as "Commercial," as opposed to the other options of "Residential," "Non-res Assembly," "Grass," "Auto-truck," "False," "Smoke Scare," "Trash," and "Other." Also noted on this document is the fact that seven volunteer fire fighters were entitled to approximately $242.00 for their services rendered related to the fire that forms the basis for the instant indictment.

10. Virtually all United States insurers of homes and business property use a designation made by Insurance Services Office (ISO) called the Public Protection Classification (PPC) in calculating premiums. In general, the price of fire insurance in a community with a good PPC is substantially lower than in a community with a poor PPC, assuming all other factors are equal. A community's PPC depends on:

   A. Fire alarm and communications systems, including telephone systems, telephone lines, staffing, and dispatching systems;

   B. The fire department, including equipment, staffing, training, and geographic distribution of fire companies;

   C. The water supply system, including conditions and maintenance of hydrants, and a careful evaluation of the amount of available water compared with the amount needed to suppress fires.

11. Owners of commercial or personal property located in an area with no fire services will receive the highest PPC of ten (10) and will pay substantially higher premiums for the same amount of coverage than will owners of property of similar value and construction type located in an area with modern fire services which has earned a lower PPC.

12. ISO PPC ratings are affected by the ability of the fire departments to respond to calls and not the number or nature of calls to which these departments respond.

## II. Discussion

Federal Rule of Criminal Procedure 12(b)(2) provides that a criminal defendant may raise an objection based on the failure of the indictment to show jurisdiction "at any time during the pendency of the proceedings." "Matters of jurisdiction may be raised at any time, because if a court lacks subject matter jurisdiction, it does not have power to hear the case." *United States v. Adesida,* 129 F.3d 846, 850 (6th Cir.1997).

■ In considering a motion to dismiss, the court's task "is to determine whether the allegations of the indictment, when accepted as true, are legally sufficient to state an offense." *United States v. Higgins,* 511 F.Supp. 453, 454 (W.D.Ky.1981) (relying on *United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962)). The court "may make preliminary findings of fact necessary to decide the questions of law presented by [a] pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones,* 542 F.2d 661, 664 (6th Cir.1976). Jurisdictional issues are questions of law which are properly raised in a pretrial motion, especially where, as here, the facts

are undisputed. *See generally United States v. Garcia*, 143 F.Supp.2d 791, 796–97 (E.D.Mich.2000); *United States v. McCormack*, 31 F.Supp.2d 176, 179–81 (D.Mass.1998).

Defendant argues that the court lacks jurisdiction over this case because the crime alleged in the indictment does not fall within 18 U.S.C. § 844(i). The federal arson statute provides that

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both....

18 U.S.C. § 844(i). Defendant contends that the Henning Fire Station was not used in interstate commerce or in any activity affecting interstate commerce, and thus the court should dismiss the indictment for lack of subject matter jurisdiction.

The Supreme Court has stated that § 844(i) "is not read to make virtually every arson in the country a federal offense." *Jones v. United States*, 529 U.S. 848, 859, 120 S.Ct. 1904, 146 L.Ed.2d 902. Instead, § 844(i) requires that "the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." *Id.* at 854 (citing *United States v. Mennuti*, 639 F.2d 107, 110 (2nd Cir.1981)). Thus, in determining whether a damaged building falls within the scope of § 844(i), "[t]he proper inquiry ... is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *Id.* at 855, 120 S.Ct. 1904 (internal citations omitted).

■ The Government argues that the inclusion of a building such as the Henning Fire Station was specifically contemplated by legislators, who changed the original language of § 844(i), which required a "business purpose," to remedy concerns that "schools, police stations, and places of worship" would not be protected. *See Jones*, 529 U.S. at 853–54 n. 5, 120 S.Ct. 1904 (citing *Russell v. United States*, 471 U.S. 858, 860–61, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985)). Nonetheless, even if Congress attempted to include such buildings, the court still must conduct a "case by case inquiry" to determine the function of the particular building at issue. *United States v. Sherlin*, 67 F.3d 1208, 1213–14 (6th Cir.1995) (reading § 844(i) to contain a jurisdictional element that must be satisfied on a case by case basis); *see also United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir.2001) (stating that while § 844(i) was drafted to include some types of non-business buildings, the relevant inquiry was into the function of the specific church at issue). The court is not persuaded that the Henning Fire Station withstands this inquiry.

In this case, the Henning Fire Station clearly was not used in interstate commerce. In *Jones*, the Supreme Court held that "used" means "active employment." *Jones*, 529 U.S. at 856, 120 S.Ct. 1904. As stated in the stipulated facts, the Henning Fire Station "houses fire fighting equipment including trucks, as well as the office, kitchen, and meeting spaces for the Henning Volunteer Fire Department." Accordingly, the purpose of the Fire Station itself was not to be used—that is, actively employed—in interstate commerce. Indeed, most of the facts to which the parties stipulate involve the purposes of the Henning Fire Department, not the Henning Fire Station. As such, the best argument the Government can make is that the Henning Fire Station was used in an activity which substantially affects interstate commerce. In other words, the court must

determine whether the Henning Fire Station was used in the activities of the Henning Fire Department, and whether those activities substantially affect interstate commerce.

It is not significant that the Henning Fire Station houses the trucks that drive to the sites that require service, even though those sites are sometimes businesses that are involved in activities that themselves affect interstate commerce. This is too attenuated a series of connections to constitute a building that is used "in any activity affecting interstate or foreign commerce." The Supreme Court explained in *Jones*, that if minimal contacts "sufficed to trigger § 844(i), the statute's limiting language, 'used in' any commerce-affecting activity, would have no office." *Jones*, 529 U.S. at 857, 120 S.Ct. 1904. Likewise, the purchasing of equipment from out of state vendors and the utilization of out of state maintenance companies are also insufficient to satisfy § 844(i). In *Jones*, the Supreme Court rejected a similar argument, stating "[p]ractically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce." *Id.* The qualification "used in" "is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 855, 120 S.Ct. 1904. Servicing businesses which

are linked to interstate commerce and purchasing equipment which has traveled through interstate commerce are both passive connections to commerce. The Henning Fire Station must have more a substantial link to interstate commerce to satisfy the jurisdictional requirement of § 844(i).

The Government points to the fact that the volunteer firemen are paid for their services and that a fee is charged for fire calls outside the city limits. Neither of these facts satisfy § 844(i). The Supreme Court's use-centered reading of § 844(i) mandates that the court look to the function of the building, not the incidental effects. The Henning Fire Station itself functions as, essentially, a storage facility and a home base for the Henning Fire Department. Based on the stipulated facts, the court does not find that the Henning Fire Station, or the Henning Fire Department for that matter, operated as a commerce oriented enterprise. This is seen even in the fact that the nominal fee charged for fire calls out of the city was billed from City Hall, and not the Fire Department. The record does not indicate that the "active employment" of the Henning Fire Station was to be used in the business of collecting funds, or paying volunteer firemen, for the services of the Henning Fire Department.[4] The record indicates merely that the Henning Fire Station was actively employed in servicing the community's fires. Any fees billed, or volunteers paid, in the process were merely incidental effects and passive connections, at best,[5] to interstate commerce.

---

**4.** This is especially true given the de minimus amounts stipulated to on the record.

**5.** The court does not hold that these activities were even passively connected to interstate commerce. The mere payment of the firemen or submitting of bills does not establish a substantial connection to *interstate* commerce. Furthermore, the court finds no sig-

nificance in the fact that seventeen volunteer firemen were paid a total of $242 for their services rendered related to the fire at issue here. "Congress did not define the crime described in § 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce." *Jones*, 529 U.S. at 854, 120 S.Ct. 1904 (citing *Mennuti*, 639 F.2d at 110).

Finally, the mere fact that fire services in general affect insurance rates does not establish that the Henning Fire Station was used in an activity substantially affecting interstate commerce. That the fire services provided through use of the station affected insurance rates does not indicate any sort of active employment, but is again evidence of, at the very least, a passive connection.

Accordingly, the court finds that the Henning Fire Station was not used in interstate commerce or in an activity affecting interstate commerce. As such, the court lacks subject matter jurisdiction over this case, and must dismiss.

■ This decision is also consistent with the principle that absent compelling evidence to the contrary, Congress is presumed not to upset the balance between federal and state power. *United States v. Lopez,* 514 U.S. 549, 562, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (relying on *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)); *see also Jones,* 529 U.S. at 851, 120 S.Ct. 1904 (interpreting § 844(i) under the principles established in *Lopez* ). Arson is inherently a state concern. *Lopez,* 514 U.S. at 561 n. 3, 115 S.Ct. 1624 ("States possess primary authority for defining and enforcing the criminal law."). "When Congress criminalizes conduct already denounced as criminal by the States, it effects a change in the sensitive relation between federal and state jurisdiction." *Id.* (internal citations omitted). Although Congress may have the authority to criminalize the arson of buildings used in interstate commerce, or used in an activity substantially affecting interstate commerce, this authority has its limits. This court will not read § 844(i) to extend so far as to cover the alleged arson of the Henning Fire Station. Courts must bear in mind the distinction between what is national and what is local. *Lopez,* 514 U.S. at 567–68, 115 S.Ct. 1624. The alleged arson of this particular fire station, while possibly criminal, is a matter of local concern.

### III. Conclusion

Accordingly, IT IS ORDERED that Defendant John Allen Laton's "Motion to Dismiss Indictment" is GRANTED.

The court also notes that there is little evidentiary value in the fact that Defendant classified the fire as "commercial." Defendant's classification choice on the "Fire Department Run Sheet" bears no weight on the court's jurisdiction conclusion.