UNITED STATES of America,
Plaintiff–Appellee,

v.

Derrick GADSDEN, Defendant–
Appellant.

No. 14–15487
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 4, 2016.

Sandra J. Stewart, George L. Beck, Jr., Kevin P. Davidson, Denise Olivia Simpson, U.S. Attorney's Office, Montgomery, AL, for Plaintiff–Appellee.

Mark Gonzalo Montiel, Mark G. Montiel, PC, Montgomery, AL, for Defendant–Appellant.

Derrick Gadsden, Yazoo City, MS, pro se.

Before WILSON, MARTIN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Derrick Gadsden appeals his 240–month sentence for conspiracy to commit wire fraud under 18 U.S.C. §§ 1343 and 1349. Gadsden pleaded guilty to opening or causing others to open checking accounts with minimum deposit amounts and then using bad checks from those accounts to make purchases. He now challenges how his sentence was calculated. First, Gadsden argues that the district court's loss calculation was not supported by sufficient evidence. Second, he argues that the district court improperly counted victims and losses from times during the conspiracy when he was incarcerated. Third, Gadsden argues that he was not a leader or organizer of the conspiracy. Finally, he argues that the conspiracy did not involve sophisticated means. After careful review, we affirm.

## I.

First, Gadsden argues that the district court's loss calculation was not supported by sufficient evidence. We review a district court's loss calculation for clear error. *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir.2011). The sentencing court "need only make a reasonable estimate of the loss, given the available information," though its calculation must be supported by "reliable and specific evidence." *Id.* (quotations omitted). If the loss amount is greater than $400,000 but not more than $1,000,000, the defendant's offense level increases by 14. USSG § 2B1.1(b)(1) (2013). If the loss amount is greater than $1,000,000 but not more than $2,500,000, the offense level increases by 16. *Id.*

The district court did not clearly err in calculating the loss amount. The court relied on the testimony of Secret Service Agent Leighton Greenlee, who used a multifactor analysis to trace bad checks to the conspiracy. A bad check was included in the loss amount only if it satisfied specific criteria, such as being: from a local bank account opened with a minimum deposit; overnighted to the account holder; written just after the account was opened; mailed to an address linked to the conspirators; used for a high-cost purchase; or used at a frequently victimized store.[1] Agent Greenlee created a spreadsheet listing checks that fit this pattern and excluded any that did not. He arrived at a total loss amount of $1,418,264.50. The district court considered this testimony and established the loss amount as $1,000,000. Neither party objected to the court's calculation.

The evidence at sentencing was sufficient to support the district court's reason-

---

1. Agent Greenlee confirmed the reliability of this analysis by interviewing 35 to 40 of the nearly 200 suspected members of the conspiracy and investigating their methods.

able estimate of the loss amount. Agent Greenlee calculated a loss amount based on a variety of factors as well as his investigation of the conspiracy. The district court reduced the amount calculated by Agent Greenlee by almost 30 percent, adding a margin of error for any checks that Agent Greenlee may have mistakenly attributed to the conspiracy. The district court's calculation triggered a lower enhancement level for Gadsden. We cannot say that the district court clearly erred in determining the loss amount.

## II.

Second, Gadsden argues that the district court improperly counted victims and losses from portions of the conspiracy that occurred while he was incarcerated on other charges. We review a district court's findings of fact for clear error and its application of those facts to justify a sentencing enhancement *de novo*. *United States v. Creel*, 783 F.3d 1357, 1359 (11th Cir.2015). The base offense level for a defendant involved in a conspiracy is determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the [conspiracy] that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1)(B) (2013). The Guidelines provide a four-level enhancement for offenses that involved 50 or more victims. *Id.* § 2B1.1(b)(2)(B).

"A conspirator's participation in a conspiracy is presumed to continue until all activity related to the conspiracy ceases." *United States v. Odom*, 252 F.3d 1289, 1299 (11th Cir.2001). "Since conspiracy is

a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of [the conspiracy's] existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." *Smith v. United States*, 568 U.S. ——, ——, 133 S.Ct. 714, 719, 184 L.Ed.2d 570 (2013) (alteration in original) (quotation and citations omitted). A defendant may avoid such liability only by withdrawing from the conspiracy, which requires him to prove that he: (1) took affirmative acts inconsistent with the object of the conspiracy, and (2) either communicated those acts or his desire to withdraw to his co-conspirators, or disclosed the scheme to law enforcement. *Odom*, 252 F.3d at 1299. "Mere cessation of participation is not sufficient to establish withdrawal." *United States v. Arias*, 431 F.3d 1327, 1341 (11th Cir.2005).

■ The district court did not clearly err by counting the losses and victims from portions of the conspiracy that occurred while Gadsden was incarcerated. Gadsden presented no evidence showing that he withdrew from the conspiracy while incarcerated. To the extent he argues that his imprisonment was tantamount to withdrawal, we have rejected this argument. *See United States v. Gonzalez*, 940 F.2d 1413, 1427 (11th Cir.1991). Thus, Gadsden's continued participation in the conspiracy was presumed. *See Odom*, 252 F.3d at 1299. Because his co-conspirators' perpetuation of the scheme was reasonably foreseeable, Gadsden remained responsible for the associated losses and victims.[2]

## III.

Third, Gadsden argues that he was not a leader or organizer of the conspiracy. Whether a defendant had a leadership role

---

**2.** Gadsden also argues that, even if he failed to withdraw, he should not have been responsible for smaller, separate check fraud conspiracies that "may" have been operating

within the larger conspiracy he helped create. But this theory is speculative and unsupported—he has presented no evidence that any smaller conspiracies actually existed.

is a finding of fact that we review for clear error. *Barrington*, 648 F.3d at 1200. The Guidelines provide a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a) (2013). Courts should consider the following factors when weighing the defendant's role:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* § 3B1.1, cmt. n. 4 (2013). All these factors need not be present—they "are merely considerations for the sentencing judge," though "the exercise of some authority in the organization" is required. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir.2009) (quotation omitted). Recruiting and directing conspirators generally shows the necessary degree of leadership. *See United States v. Caraballo*, 595 F.3d 1214, 1231–32 (11th Cir.2010).

■ The district court did not clearly err in concluding that Gadsden was a leader or organizer of the conspiracy. All of the 35 to 40 participants interviewed by Agent Greenlee identified Gadsden or his brother, David, as being involved in the conspiracy. Gadsden recruited and directed at least five people in furtherance of the conspiracy, one of whom made ten trips around Alabama on his behalf. Gadsden also arranged truck rentals to pick up fraudulently purchased merchandise, directed people who he said "worked for him" to buy certain goods for resale to regular customers, and used "recruiters" to find more participants. The district court did not clearly err by imposing a leadership-role enhancement on Gadsden.[3]

## IV.

■ Finally, Gadsden argues that the conspiracy could not have involved sophisticated means because the process of passing bad checks is inherently simple. We review a district court's finding that the defendant used sophisticated means for clear error. *Barrington*, 648 F.3d at 1199. The Guidelines provide a two-level enhancement for offenses involving sophisticated means. USSG § 2B1.1(b)(10) (Nov. 2013). "Sophisticated means" are defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," which may include actions like hiding assets or transactions via fictitious entities, corporate shells, or offshore accounts. *Id.* § 2B1.1, cmt. n. 9(B). This enhancement applies when the defendant engaged in "repetitive, coordinated conduct designed to allow him to execute his fraud and evade detection." *United States v. Bane*, 720 F.3d 818, 827 (11th Cir.2013). Each action during the conspiracy need not be sophisticated; it is enough for the scheme to be sophisticated in its totality. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir.2010).

The district court did not clearly err in concluding that the conspiracy involved sophisticated means. The conspiracy lasted for several years, involved around 200 participants, and targeted businesses in four states. The district court identified other factors that suggested sophistication: (1)

---

**3.** Gadsden also argues that he could not have been a leader of the conspiracy because it continued in his absence while he was incarcerated. We have already rejected Gadsden's argument that he is absolved of responsibility for the conspiracy during his periods of incarceration. *See supra* Part II.

Gadsden's use of third parties to open checking accounts, which effectively concealed his identity; (2) the highly specific nature of the products Gadsden fraudulently purchased for his customers; (3) the technique Gadsden used to telephonically "push[ ] through" bad checks with check-processing companies if they were initially refused by a merchant; and (4) the large number of individual transactions involved. Although Gadsden argues that the scheme could not have been sophisticated given that it did not involve fictitious entities, corporate shells, or offshore accounts, these are not the only types of transactions that may be sophisticated. *See Ghertler*, 605 F.3d at 1268 (upholding a sophisticated-means enhancement even though the defendant "sometimes made little or no effort to conceal either the fact of his fraud or his identity"). The totality of the conspiracy was sufficiently sophisticated to support the district court's finding here.

**AFFIRMED.**