In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-3524

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEREMY S. CRAFT,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06 CR 11—**Robert L. Miller, Jr.**, *Chief Judge.*

---

ARGUED MARCH 29, 2007—DECIDED MAY 1, 2007

---

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* A jury convicted Jeremy Craft of six counts of damaging, by means of fire, a building used in interstate commerce in violation of 18 U.S.C. § 844(i) and two counts of knowingly using a fire to commit a felony in violation of 18 U.S.C. § 844(h). Craft filed a motion for acquittal on five of the counts. The district court denied the motion, and Craft appeals. For the following reasons, we affirm in part and reverse in part.

## I. BACKGROUND

Between January 2005 and January 2006, there were over twenty arson fires set in the southeast side of South

Bend, Indiana. On the evening of January 13, 2006, Michael Smith left his apartment to smoke a cigarette and saw Jeremy Craft wearing a dark blue Chicago Bears jacket. Smith was a friend of Craft but had not seen him for some time. He followed Craft and saw him walk up to the back door of a residence at 303 E. Dayton, break out a window pane in the back door, light up two flares, and throw them inside the house through the broken window pane. Smith ran home, called 911, and reported what he had witnessed.

The fire department responded to Smith's call and collected fire debris from the scene that tested positive for the presence of gasoline. Fire department investigators also found flare caps near the rear door. The police initiated a search for Craft and found him later that evening with another friend, John Wolverton, at 302 ½ E. Dayton. Craft was wearing a dark blue Chicago Bears jacket that reeked of gasoline. The police arrested Craft and kept him in custody at the St. Joseph County Jail.

The police began an investigation into the arson fires and discovered that Craft had confessed to friends and acquaintances that he had started fires at several buildings. Craft told Wolverton that he had started a fire at an Indiana truck stop and that he had singed his Chicago Bears jacket when he set fire to a house on Koontz Lake. He also admitted to Wolverton that he set a fire at 242 E. Indiana in South Bend, a house owned by the Ortizes, a couple of Mexican descent, and had set fire to a house occupied by an African American man named Sam Triplett. In addition, Craft told Wolverton about setting fires at each of the following locations in South Bend: 1612 S. Michigan, 807 W. Indiana Ave., 1615 S. Columbia, and 218 E. Indiana Ave. Craft further admitted setting the arson fires to his friend David Pulsifer, and to fellow inmates Tremaine Grant and David Chipps.

On February 9, 2006, a grand jury charged Craft with seven counts of damaging, by means of fire, a building used in interstate commerce in violation of 18 U.S.C. § 844(i) (counts one, three, four, five, seven, eight, and ten), one count of carrying and using a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (count six), and two counts of knowingly using a fire to commit a felony in violation of 18 U.S.C. § 844(h) (counts two and nine). Counts six and ten were later dismissed. On June 13, 2006, after a three and a half day trial, the jury convicted Craft on all remaining counts.

On June 21, 2006, Craft filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29 on counts two, four, five, seven, and nine. On August 28, 2006, the district court denied the motion. The following day, the district court conducted a sentencing hearing and ruled that Craft's combined Guideline's range was 168 to 210 months' imprisonment.[1] The district court sentenced Craft to 210 months in prison for counts one, three, four, five, and seven to run concurrently; ten years for count two to run consecutive to the 210 months; and twenty years for count nine to run consecutive to all other terms of imprisonment. The district court also imposed a term of three years supervised release, restitution, and a special assessment of $800. On September 11, 2006, Craft filed his notice of appeal.

## II. DISCUSSION

On appeal, Craft challenges the sufficiency of the evidence with regard to counts two, four, five, seven, and

---

[1] On counts two and nine, Craft was subject to mandatory minimum consecutive sentences of ten years and twenty years, respectively.

nine.[2] When reviewing a conviction for sufficiency of evidence, this Court considers the evidence in the light most favorable to the government, and all inferences are drawn in the government's favor. *United States v. Masten*, 170 F.3d 790, 794 (7th Cir. 1999). Reversal is appropriate only when the record contains no evidence, however weighed, from which the jury could have found guilt beyond a reasonable doubt. *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir. 1996).

---

[2]

| Count | Violation Charged | Fire Date | Address of Fire |
|---|---|---|---|
| 2 | 18:844(h)- Use of Fire to Commit a Felony | May 16, 2005 | 242 E. Indiana St., South Bend, IN |
| 4 | 18:844(i)- Arson | Sept. 19, 2005 | 618 E. Broadway, South Bend, IN |
| 5 | 18:844(i)- Arson | Sept. 20, 2005 | 807 W. Indiana Ave., South Bend, IN |
| 7 | 18:844(i)- Arson | Oct. 29, 2005 | 1615 S. Columbia, South Bend, IN |
| 9 | 18:844(h)- Use of Fire to Commit a Felony | Oct. 10, 2005 | 311 E. Indiana, South Bend, IN |

## A.  Counts Two and Nine

Craft argues that the government presented insufficient proof to sustain his conviction under counts two and nine, which charged Craft with using fire to commit another federal felony, specifically, a violation of 42 U.S.C. § 3631. Section 3631 states:

> Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate, or interfere with—
>
> a) any person because of his race, color, religion, sex, handicap (as such term is defined in section 3602 of this title), familial status (as such term is defined in section 3602 of this title), or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling, or applying for or participating in any service, organization, or facility relating to the business or renting dwellings . . . shall be fined . . . or imprisoned not more than one year, or both . . . .

42 U.S.C. § 3631.

Craft first maintains that the government did not prove that he violated § 3631 because it offered insufficient evidence that the arson fires were racially motivated. We disagree. The evidence at trial demonstrated that Lucio and Diana Ortiz, both of Mexican descent, owned the property located at 242 E. Indiana, the subject of count two, and that Sam Triplett, an African American man, occupied 311 E. Indiana, the subject of count nine. The government presented five witnesses who testified that Craft told them that he purposefully set fire to both of these homes. John King testified that he asked Craft why he was setting the homes on fire. Craft replied that "it

was fun" and added that the neighborhood "was full of wetbacks and niggers anyway."

Wolverton testified that when Craft told him about setting the Ortiz residence on fire, Craft said that he had "cooked the Mexicans." Wolverton also testified that Craft told him about setting fire to Triplett's home and stated that he had "cooked Sam." Craft also said, "Fuck Sam. Sam's a nigger." Finally, Pulsifer testified that Craft was a racist and made numerous racist remarks and vulgar racial epithets during the relevant time frame. This evidence was sufficient for a jury reasonably to conclude that Craft was motivated by racial animus toward his victims. *See United States v. J.H.H.*, 22 F.3d 821, 826-27 (8th Cir. 1994) (holding that evidence of cross burnings at night, along with racial slurs contemporaneous with the burnings, and complaints about an African American in the neighborhood was sufficient evidence of intent under § 3631); *United States v. White*, 788 F.2d 390, 392 (6th Cir. 1986) (holding that evidence of arson, racial slurs, and comments about "niggers" in the neighborhood was sufficient for conviction under § 3631).

Craft contends that the evidence showed that he set fire to Triplett's home because Triplett had not paid Craft enough money to help him move out of the apartment. The government was not required to prove, however, that racial animus was Craft's sole motivation in setting the fire. Rather, it was only required to prove that the victims' race or ethnicity partially motivated Craft's crimes. *See United States v. Magleby*, 241 F.3d 1306, 1310 (10th Cir. 2001) (approving an instruction in a § 3631 case that stated, "it does not matter that the defendant may have had more than one motive in performing the act as long as . . . race was one of his motives"). In any case, the jury was free to reject Craft's stated reason for setting the fire at 311 E. Indiana in favor of other testimony that indicated that he set the fire because of racial animus.

Craft next asserts that the government did not prove that he interfered with the Ortizes' or Triplett's property rights. He claims that because the Ortizes did not live on the property at 242 E. Indiana (they were fixing up the property for their son), he did not interfere with their housing rights. However, § 3631 can be violated before the owners physically reside in the property. *See, e.g.*, *White*, 788 F.2d at 392 (affirming a conviction under § 3631 where the defendant burned a black family's home while it was still under construction); *United States v. Anzalone*, 555 F.2d 317, 318 (2d Cir. 1977) (affirming a conviction under § 3631 where the defendant set fire to a black family's home before the family moved in).

Craft also states that he did not interfere with Triplett's housing rights because Triplett moved out of the apartment at 311 E. Indiana on the day that Craft set fire to it. However, § 3631 prohibits interfering with a person "who is or *has been* . . . renting . . . a dwelling." 42 U.S.C. § 3631 (emphasis added). Accordingly, because Triplett had been renting the residence at 311 E. Indiana up until the day Craft set fire to it, Craft's actions were prohibited under § 3631.

### B. Counts Four, Five, and Seven

Craft next claims that the district court erred by denying his motion for acquittal on counts four, five, and seven, which charged Craft with violating 18 U.S.C. § 844(i). Section 844(i) provides,

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years . . . .

18 U.S.C. § 844(i). Craft contends that the properties identified in counts four, five, and seven were not "in or affecting commerce" as required under the statute.

The Supreme Court has twice interpreted the scope of the statute's "in or affecting commerce" language. In *Russell v. United States*, 471 U.S. 858 (1985), the Court considered whether the arson of a two-unit apartment building that was used as a rental property fell within the purview of § 844(i). The Court held that "the statute only applies to property that is 'used' in such 'activity' that affects commerce" and reasoned that "[t]he rental of real estate is unquestionably such an activity." *Id.* at 862. In its analysis, the Court noted that the original version of the bill contained the words "for business purposes," but that Congress removed such language before enactment "after considering whether the bill as originally introduced would cover bombings of police stations or churches . . . ." *Id.* at 860. The Court read this legislative history to suggest "that Congress at least intended to protect all business property, as well as some additional property that might not fit that description, but perhaps not every private home." *Id.* at 862. Because the apartments in the building were rented to tenants at the time of the fire, the Court concluded that the property was "being used in an activity affecting interstate commerce." *Id.*

In *Jones v. United States*, 529 U.S. 848 (2000), the Court answered the question whether § 844(i) covers the arson of a private residence. It ruled that § 844(i) does not reach an owner-occupied residence that is not used for any commercial purpose. *Id.* at 852. The Court emphasized that the qualifying words "used in" mandate that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce. It then outlined a two-part inquiry for assessing the applicability of § 844(i), which entails an analysis of the function of the building itself and a determination of whether that

function affects interstate commerce. The Court said that a building used in an activity affecting interstate commerce must have more than a passive, passing, or past connection to commerce. The Court noted that "practically every building . . . is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce." *Id.* at 857. Accordingly, the Court ruled that a private residence does not fit within § 844(i) where its only relationship to interstate commerce is the receipt of natural gas, a mortgage, or an insurance policy because such a limited nexus does not constitute active employment for commercial purposes. With that framework in place, we turn to the specific counts that Craft challenges.

### 1. Count Four (618 E. Broadway) and Count Seven (1615 S. Columbia)

Craft argues that because the 618 E. Broadway and 1615 S. Columbia buildings, both rental properties, were temporarily unoccupied at the time Craft set fire to them, they were not being used in an activity that affects interstate commerce. He maintains that after *Jones*, rental properties must be occupied to fall within the scope of § 844(i). We rejected the same argument in *Martin v. United States*, 333 F.3d 819, 822 (7th Cir. 2003). In *Martin*, a building owner was convicted of setting fire to his apartment building, which was temporarily unoccupied and partially boarded-up at the time of the fire. The owner mounted a collateral attack on his conviction, arguing that *Jones* limited the reach of the federal arson statute such that temporarily vacant rental properties were not covered. We dismissed this argument and stated that "the temporary suspension of commercial activity

in a building . . . does not permanently remove that building from the scope of the arson statute." *Id.* at 821. The owner contended that the lack of tenants and presence of boarded-up windows demonstrated that he no longer intended to rent the property. Our decision rejected the owner's contentions and noted that he had received rental payments only two months before the fire and had improved the condition of the units even after the tenants moved out. *Id.* at 822.

In this case, the government presented sufficient evidence that 618 E. Broadway was a rental property, despite the fact that it was temporarily vacant. Specifically, it offered evidence that the owner, a company named Beneficial, intended to use the property as a rental property and that Craft himself attempted to rent the property, but was denied. The government also offered sufficient evidence that the property located at 1615 S. Columbia was rental property. Eric Forrest purchased the building as an investment and renovated it for future rental as Section 8 low income housing. Although the property had not yet been listed for rental, Forrest had placed it on the Section 8 list so that it could be inspected to determine its eligibility. Because the owners of these properties did not permanently remove the buildings from the stream of commerce, they were both within the scope of § 844(i).

### 2.   Count Five (807 W. Indiana)

Craft further argues that the government did not produce sufficient evidence to prove that the property located at 807 W. Indiana, which was used as a clubhouse for local members of the Hell's Angels motorcycle club, was used in an activity affecting interstate commerce. Courts have held that a de minimis connection to interstate commerce is not sufficient to violate the statute. *See, e.g.*, *United States v. Odom*, 252 F.3d 1289, 1296-97 (11th Cir.

2001) (finding that a church which received donations from out-of-state, made purchases from out-of-state, and received indirect out-of-state contributions was not being used in an activity that affected interstate commerce because the effect was "too minimal, too indirect"); *United States v. Rea*, 223 F.3d 741, 743 (8th Cir. 2000) (church's use of materials purchased in interstate commerce insufficient to meet interstate commerce test).

By contrast, where a property is actively employed for commercial purposes, the interstate commerce element may be met if the connection to interstate commerce is both continuing and substantial. *See, e.g.*, *United States v. Laton*, 352 F.3d 286, 301 (6th Cir. 2003) (holding that a fire station's role in fighting fires constituted an active, rather than a passive employment in interstate commerce); *United States v. Rayborn*, 312 F.3d 229, 234-35 (6th Cir. 2002) (holding that the interstate commerce nexus was satisfied where a church broadcasted radio messages by renting out time from various stations to increase attendance and contributions from out-of-state, drew members from three states, paid salaries, and hosted gospel concerts featuring out-of-state talent); *United States v. Terry*, 257 F.3d 366, 370 (4th Cir. 2001) (holding that a church with a daycare center that was open from 7:00 am to 5:30 pm Monday through Friday and employed its own teachers and charged a fee of $706 per month satisfied the interstate commerce test).

After reviewing the record, we conclude that the government offered insufficient evidence that the Hells Angels clubhouse was used in an activity that affects interstate commerce. Jack Kendall, a former president of the Indiana chapter of the Hells Angels, stated that the property was used as a clubhouse for Hells Angels members "for [once-a-month] meetings and basically just parties of our own." Kendall testified that the members paid dues at the monthly meetings. When asked "where

are those dues sent to," Kendall replied "the dues aren't sent nowhere. They stay right in the charter to help pay for the expense of the building, the property, and stuff like that." Kendall also testified, however, that the dues are used to reimburse club members for trips across state lines. He stated that each of the affiliate clubs send representatives to funerals when a Hells Angels member dies and that he was once a representative at a funeral in Germany. He also testified that members went to rallies in South Dakota, and that the owner of the property was HAMC, Inc., which is incorporated in Oakland, California.

Although some of the members' dues were used to reimburse them for trips taken across state lines, any affect that those dues had on interstate commerce was too passive, too minimal, and too indirect to place the clubhouse property in § 844(i)'s reach. Indeed, reimbursing members for travel is comparable to the out-of-state purchases made by the churches in *Odom* and *Rea*. Without further evidence that the Hells Angels members actively employed the clubhouse for commercial purposes, no jury reasonably could conclude that the clubhouse was used in a manner that affected interstate commerce.

### III. CONCLUSION

For the above reasons, we AFFIRM Craft's conviction on counts two, four, seven, and nine, REVERSE Craft's conviction on count five, and REMAND to the district court for re-sentencing.

No. 06-3524                                                  13

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
